1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| WM. WRIGLEY JR. COMPANY, a Delaware corporation; and MARS, INCORPORATED, a Delaware corporation, | Case No.: 5:21-cv-00777 JWH (SHKx) |
| Plaintiffs, | **FINAL JUDGMENT BY CONSENT UNDER RULE 54(b) INCLUDING PERMANENT INJUNCTIVE RELIEF AS TO DEFENDANT YAUHENIYA LIS D/B/A GASBUDS** |
| v. | |
| ROBERTO CONDE d/b/a 2020EDIBLEZ, an individual; JOEL LEDESMA d/b/a INLAND EMPIRE 420 SUPPLY, an individual; JESSICA MOHR, an individual; STEPHEN MATA d/b/a OC 420 COLLECTION, an individual; YAUHENIYA LIS d/b/a GASBUDS, an individual; EDWARD AWAD d/b/a CANNABIS 420 SUPPLY, an individual; GREEN RUSH EXTRACTS LLC, a California limited liability company; MARCO BURGOS d/b/a 2020EDIBLEZ, an individual; and DOES 4 through 10, | |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

This matter having come before the Court for the entry of Final Judgment by Consent Under Rule 54(b) Including Permanent Injunctive Relief as to Defendant Yauheniya Lis d/b/a GasBuds ("Lis"), with the consent of plaintiffs Wm. Wrigley Jr. Company ("Wrigley") and Mars, Incorporated ("Mars," and, together with Wrigley, "Plaintiffs") and Lis (Plaintiffs and Lis are collectively referred to herein as the "Parties," and each individually as a "Party"), in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, it is **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1.      Lis has been properly served and consents to the Court exercising personal jurisdiction over her.  Lis waives all defenses of lack of jurisdiction over her person, improper venue, insufficiency of process, and insufficiency of service of process.

2.      This Court has subject matter jurisdiction over this action.

3.      The Parties agree to submit to the jurisdiction of this Court to enforce the provisions of this Final Judgment by Consent Under Rule 54(b) Including Permanent Injunctive Relief as to Defendant Yauheniya Lis d/b/a GasBuds (the "Final Judgment by Consent") worldwide.

4.      Plaintiff Wrigley is a Delaware corporation with its principal place of business at 1132 West Blackhawk Street, Chicago, Illinois 60642.

5.      Plaintiff Mars is a Delaware corporation with its principal place of business at 6885 Elm Street, McLean, Virginia 22101.

6.      Defendant Lis is an individual residing in Los Angeles County, California and has at all relevant times participated in the complained of activities by the business known as GasBuds, which has conducted its operations through the website located at https://www.gasbuds.com/.

7.      Wrigley is a recognized global leader in confections and, together with its affiliates, offers a wide range of product offerings including gum, mints, and candies.  Wrigley markets products under dozens of well-known, distinctive, and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

2

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS

famous brands, including SKITTLES®, STARBURST®, LIFE SAVERS®, DOUBLEMINT®, and JUICY FRUIT®, to name a few.

8.      Wrigley and its predecessors have long marketed candy and related products under the famous SKITTLES® mark and trade dress, which features, among other things, the word mark SKITTLES® in white block lettering, distinctive rainbow designs, distinctive candy-coated lentils with an "S" imprinted thereon, and a cascade design of these candy lentils (hereinafter referred to as the "Skittles Trade Dress"), examples of which are shown below:





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS



9.      For 50 years, Wrigley and its predecessors-in-interest have continuously used the SKITTLES® mark to advertise, promote, and sell candy throughout the United States.

10.     Wrigley has earned billions of dollars in revenues from the sale of SKITTLES® candy in the United States.  Many millions of people throughout the country have purchased or consumed SKITTLES® candy.  In fact, SKITTLES® candy has been the best-selling non-chocolate candy in the United States for years.

11.     Wrigley has invested many millions of dollars to promote SKITTLES® candy.  Wrigley's advertisements and commercials for SKITTLES® have been seen by many millions of people nationwide.  Wrigley advertises SKITTLES® candy during the Super Bowl and other highly watched events.

12.     Based on the wide-spread and long-standing use and recognition of the SKITTLES® brand, Wrigley enjoys extensive trademark rights in the SKITTLES® mark and the Skittles Trade Dress.

13.     Wrigley owns numerous federal registrations for its SKITTLES® mark and the Skittles Trade Dress, including, but not limited to, U.S. Reg. Nos. 1,221,105; 2,535,714; 4,377,303; and 4,983,664 (such federal registrations, collectively with the common law trademark rights in the SKITTLES® mark and Skittles Trade Dress, are hereinafter referred to as the "SKITTLES® Mark and Trade Dress").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

4

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS

14.     Similarly, Wrigley and its predecessors have long marketed candy and related products under the famous STARBURST® mark and trade dress, which features, among other things, the word mark STARBURST® in stylized lettering and distinctive wrappers with an "S" imprinted thereon (hereinafter referred to as the "Starburst Trade Dress"), examples of which are shown below:



15.     For 50 years, Wrigley and its predecessors-in-interest have continuously used the STARBURST® mark to advertise, promote, and sell candy throughout the United States.

16.     Wrigley has earned billions of dollars in revenue from the sale of STARBURST® candy in the United States.  Many millions of people throughout the country have purchased or consumed STARBURST® candy.

17.     Wrigley has invested many millions of dollars to promote STARBURST® candy.  Wrigley's advertisements and commercials for STARBURST® have been seen by many millions of people nationwide.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

5

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS

18.     Based on the wide-spread and long-standing use and recognition of the STARBURST® brand, Wrigley enjoys extensive trademark rights in the STARBURST® mark and the Starburst Trade Dress.

19.     Wrigley owns numerous federal registrations for its STARBURST® mark and trade dress, including, but not limited to, U.S. Reg. Nos. 1,000,007; 1,545,544; 4,179,436; 4,268,392; and 4,625,960 (such federal registrations, collectively with the common law trademark rights in the STARBURST® mark and Starburst Trade Dress, are hereinafter referred to as the "STARBURST® Mark and Trade Dress").

20.     Additionally, Wrigley and its predecessors have long marketed candy and related products under the famous LIFE SAVERS® mark and trade dress, which features, among other things, the word mark LIFE SAVERS® in stylized lettering and distinctive circular candies with "LIFE SAVERS" imprinted thereon (hereinafter referred to as the "Life Savers Trade Dress").  An example of LIFE SAVERS® packaging is shown below:



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

6

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS

21.     For 50 years, Wrigley and its predecessors-in-interest have continuously used the LIFE SAVERS® mark to advertise, promote, and sell candy throughout the United States.

22.     Wrigley has earned billions of dollars in revenue from the sale of LIFE SAVERS® candy in the United States.  Many millions of people throughout the country have purchased or consumed LIFE SAVERS® candy.

23.     Wrigley has invested many millions of dollars to promote LIFE SAVERS® candy.  Wrigley's advertisements and commercials for LIFE SAVERS® have been seen by many millions of people nationwide.

24.     Based on the wide-spread and long-standing use and recognition of the LIFE SAVERS® brand, Wrigley enjoys extensive trademark rights in the LIFE SAVERS® mark and the Life Savers Trade Dress.

25.     Wrigley owns numerous federal registrations for its LIFE SAVERS® mark and trade dress, including, but not limited to, U.S. Reg. Nos. 115,895; 236,694; 1,130,067; 2,358,709; 4,214,036; and 4,769,489 (such federal registrations collectively with the common law trademark rights in the LIFE SAVERS® mark and Life Savers Trade Dress, are hereinafter referred to as the "LIFE SAVERS® Mark and Trade Dress").

26.     Mars is a recognized global leader in chocolates, confections, and other food products.  Mars offers a wide range of product offerings, including chocolate bars, under dozens of well-known, distinctive, and famous brands, including SNICKERS®, 3 MUSKETEERS®, MILKY WAY®, M&M'S®, and TWIX®, to name a few.

27.     Mars has long marketed candy and related products under the famous SNICKERS® mark and trade dress, which features, among other things, the word mark SNICKERS® in blue block lettering in a parallelogram outlined in red (hereinafter referred to as the "Snickers Trade Dress"), examples of which are shown below:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

7

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS







28.    For almost 100 years, Mars has continuously used the SNICKERS®
mark to advertise, promote, and sell chocolate bars throughout the United States.

29.    Mars has earned billions of dollars in revenues from the sale of
SNICKERS® candy and other SNICKERS® branded products in the United States.
Many millions of people throughout the country have purchased or consumed
SNICKERS® candy and other SNICKERS® branded products.  In fact, the

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

8

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS

SNICKERS® chocolate bar has been one of the best-selling chocolate bars in the United States for years.

30.    Mars has invested many millions of dollars to promote SNICKERS® candy.  Mars' advertisements and commercials for SNICKERS® have been seen by many millions of people nationwide.  Mars has advertised SNICKERS® candy during the Super Bowl and other highly watched events.

31.    Based on the wide-spread and long-standing use and recognition of the SNICKERS® brand, Mars enjoys extensive trademark rights in the SNICKERS® mark and the Snickers Trade Dress.

32.    Mars owns numerous federal registrations for its SNICKERS® mark, parallelogram design, and chocolate bar design, including, but not limited to, U.S. Reg. Nos. 239,311; 1,270,149; 1,563,583; 1,593,286; 2,061,849; 2,082,946; 2,104,555; 2,911,432; 3,063,755; 3,120,788; 5,047,574; 6,465,002; and 6,480,397 (such federal registrations, collectively with the common law trademark rights in the SNICKERS® mark and Snickers Trade Dress, are hereinafter referred to as the "SNICKERS® Mark and Trade Dress").

33.    Similarly, Mars has long marketed candy and related products under the famous 3 MUSKETEERS® mark and trade dress, which features, among other things, the word mark 3 MUSKETEERS® in stylized red lettering outlined in blue and the number 3 inside a blue shield design (hereinafter referred to as the "3 Musketeers Trade Dress"), an example of which is shown below:



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

34.     For 90 years, Mars has continuously used the 3 MUSKETEERS® mark to advertise, promote, and sell chocolate bars throughout the United States.

35.     Mars has earned millions of dollars in revenues from the sale of 3 MUSKETEERS® candy in the United States.  Many millions of people throughout the country have purchased or consumed 3 MUSKETEERS® chocolate products. In fact, the 3 MUSKETEERS® chocolate bar has been a popular chocolate bar in the United States for years.

36.     Mars has invested many millions of dollars to promote 3 MUSKETEERS® candy.  Mars' advertisements and commercials for 3 MUSKETEERS® have been seen by many millions of people nationwide.

37.     Based on the wide-spread and long-standing use and recognition of the 3 MUSKETEERS® brand, Mars enjoys extensive trademark rights in the 3 MUSKETEERS® mark and the 3 Musketeers Trade Dress.

38.     Mars owns federal registrations for its 3 MUSKETEERS® mark and the 3-shield design, including, but not limited to, U.S. Reg. Nos. 1,272,036; 1,683,918; 2,675,569; 3,338,622; and 5,596,164 (such federal registrations, collectively with the common law trademark rights in the 3 MUSKETEERS® mark and 3 Musketeers Trade Dress, are hereinafter referred to as the "3 MUSKETEERS® Mark and Trade Dress").

39.     Additionally, Mars has long marketed candy and related products under the famous MILKY WAY® mark and trade dress, which features, among other things, the word mark MILKY WAY® in stylized lettering on a swirled ellipse design (hereinafter referred to as the "Milky Way Trade Dress"), examples of which are shown below:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS





40.     For 100 years, Mars has continuously used the MILKY WAY® mark to advertise, promote, and sell chocolate bars throughout the United States.

41.     Mars has earned millions of dollars in revenues from the sale of MILKY WAY® candy and other MILKY WAY® branded products in the United States.  Many millions of people throughout the country have purchased or consumed MILKY WAY® candy.  In fact, the MILKY WAY® chocolate bar has been a popular chocolate bar in the United States for years.

42.     Mars has invested many millions of dollars to promote MILKY WAY® candy.  Mars' advertisements and commercials for MILKY WAY® have been seen by many millions of people nationwide.

43.     Based on the wide-spread and long-standing use and recognition of the MILKY WAY® brand, Mars enjoys extensive trademark rights in the MILKY WAY® mark and the Milky Way Trade Dress.

44.     Mars owns numerous federal registrations for its MILKY WAY® mark, including, but not limited to, U.S. Reg. Nos. 1,161,203; 1,272,034; 1,508,474;

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

1,533,492; 2,316,816; 2,335,708; 2,430,868; 2,498,018; 2,514,593; and 4,535,789 (such federal registrations, collectively with the common law trademark rights in the MILKY WAY® mark and Milky Way Trade Dress, are hereinafter referred to as the "MILKY WAY® Mark and Trade Dress").

45.     Each of the above-referenced trademark registrations are valid, subsisting, and in full force under 15 U.S.C. § 1065, and, together with Plaintiffs' extensive common law rights, make the SKITTLES® Mark and Trade Dress, STARBURST® Mark and Trade Dress, and LIFE SAVERS® Mark and Trade Dress (collectively, the "Wrigley Trademarks"), and the SNICKERS® Mark and Trade Dress, 3 MUSKETEERS® Mark and Trade Dress, and MILKY WAY® Mark and Trade Dress (collectively, the "Mars Trademarks" and, together with the Wrigley Trademarks, the "Subject Trademarks") valuable assets owned by Plaintiffs.

46.     Lis, doing business as GasBuds, has engaged in the marketing of edible cannabis candy products.

47.     Lis used the Subject Trademarks, without authorization or license, in the marketing of her products.

48.     Specifically, Lis has marketed the products online via the GasBuds website, located at https://www.gasbuds.com/, which violates Plaintiffs' rights in the Subject Trademarks.  Those products include: (1) "Medicated Sour Skittles 600mg THC"; (2) "Medicated Sour Skittles – 400mg THC"; (3) "Medicated Yellow Sour Skittles – 400mg THC"; (4) "High Tolerance Concentrates Skittlez – 1g Cartridge"; (5) "High Tolerance – Shorty's 5 personal infused pre-rolls (Blue Skittles)"; (6) "BPB – Zerbert (ZkittlesXSunsent Sherbert) – 3.5g"; (7) "CANABOTANICA Shake – Cherry Pie X Sherbert X Zkitles 28g"; (8) "High Tolerance Live Resin Concentrates – Watermelon Zkittlez – 1g Cartridge"; (9) "High Tolerance Concentrates ZKITTLES – 1g Cartridge"; (10) "Interface Live Resin Cart – Watermelon Zkittlez 1G"; (11) "Stndrd Company Zkittles – Disposable 500mg";

(12) "WARRIORS Zkittles – Cartridge 1g"; (13) "STARBUDS Gummies – 500mg THC"; (14) "STARBUDS Medicated Gummies Original – 500mg THC"; (15) "STARBUDS Medicated Gummies Sour – 500mg THC"; (16) "Medicated Cannaburst Gummies – 500mg THC"; (17) "Mini Starbuds Medicated Gummies – 408mg THC"; (18) "Medicated Life Savers Gummies Wild Berries 600mg"; (19) "Love Saverz Gummies – Collisions 600mg"; (20) "THC Sni*kers Chocolate Bar – 1000mg"; (21) "THC Chocolate Bar (like a sni**ers) – 1000mg"; (22) "3 Marijuanas Chocolate Bar – 1000mg"; and (23) "THC Chocolate Milky Weed – 1000mg thc."  These products, collectively referred to as the "GasBuds Infringing Products," are pictured below as they appear or appeared on GasBud's website:



FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS



FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27
28



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS



**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

49.     With respect to the SKITTLES® Mark and Trade Dress, Lis adopted and used the SKITTLES® mark in plain text and white block lettering, distinctive rainbow designs, images of candy-coated lentils with an "S" imprinted thereon, and/or a design featuring such candy lentils cascading along an upside-down rainbow, marks and trade dress that are identical to, substantially indistinguishable from, and/or imitations of the SKITTLES® Mark and Trade Dress and the marks and logos in the SKITTLES® registrations.

50.     With respect to the STARBURST® Mark and Trade Dress, Lis adopted and used the STARBURST® and "Starbuds" marks with stylized lettering and images of square candies with a stylized "S" imprinted thereon, marks and trade dress that are identical to, substantially indistinguishable from, and/or imitations of the STARBURST® Mark and Trade Dress and the marks and logos in the STARBURST® registrations.

51.     With respect to the LIFE SAVERS® Mark and Trade Dress, Lis adopted and used images of the LIFE SAVERS® distinctive circular candies, marks and trade dress that are identical to, substantially indistinguishable from, and/or imitations of the LIFE SAVERS® Mark and Trade Dress and the marks and logos in the LIFE SAVERS® registrations.

52.     With respect to the SNICKERS® Mark and Trade Dress, Lis adopted and used the SNICKERS® mark in blue block lettering in a parallelogram outlined in red, marks and trade dress that are identical to, substantially indistinguishable from, and/or imitations of the SNICKERS® Mark and Trade Dress and the marks and logos in the SNICKERS® registrations.

53.     With respect to the 3 MUSKETEERS® Mark and Trade Dress, Lis adopted and used the mark and trade dress featuring the number "3" inside a blue shield design, marks and trade dress that are identical to, substantially indistinguishable from, and/or imitations of the 3 MUSKETEERS® Mark and Trade Dress and the marks and logos in the 3 MUSKETEERS® registrations.

54.     Lis' complained-of acts above constitute the following:

a.     Counterfeiting of the SKITTLES® Mark and Trade Dress, the STARBURST® Mark and Trade Dress, the LIFE SAVERS® Mark and Trade Dress, the SNICKERS® Mark and Trade Dress, and the 3 MUSKETEERS® Mark and Trade Dress in violation of 15 U.S.C. § 1114;

b.     Infringement of the Subject Trademarks in violation of 15 U.S.C. §§ 1114 and 1125(a);

c.     Dilution of the inherently distinctive and famous Subject Trademarks in violation of 15 U.S.C. § 1125(c);

d.     Unfair competition and deceptive acts and practices in violation of 15 U.S.C. § 1125(a)(1)(A);

e.     Violation of California Business and Professions Code §§ 17200, *et seq.*;

f.     Dilution of the inherently distinctive and famous Subject Trademarks in violation of California Business and Professions Code § 14247.

55.     This is an exceptional case in accordance with 15 U.S.C. § 1117.

56.     Lis and her respective agents, servants, employees, successors, assigns, attorneys, and all other persons acting in concert or in participation with or affiliated with Lis, jointly and severally, are permanently enjoined and restrained:

a.     From directly or indirectly engaging in any further trademark counterfeiting, trademark infringement, trademark dilution, unfair competition, or deceptive business practices relating to the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, the STARBURST® Mark and Trade Dress, the LIFE SAVERS® Mark and Trade Dress, the SNICKERS® Mark and Trade Dress, the 3 MUSKETEERS® Mark and Trade Dress, and the MILKY WAY® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs;

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

b.      From making, manufacturing, advertising, marketing, offering, selling, or distributing any products that feature, copy, imitate, simulate, or are confusingly similar to, or are likely to dilute the distinctive nature of, or tarnish the goodwill of, the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, the STARBURST® Mark and Trade Dress, the LIFE SAVERS® Mark and Trade Dress, the SNICKERS® Mark and Trade Dress, the 3 MUSKETEERS® Mark and Trade Dress, and the MILKY WAY® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs;

c.      From representing by any means whatsoever, directly or indirectly, that any products sold or services rendered by Lis and/or GasBuds are associated with, sponsored by, licensed by, and/or connected or affiliated with Plaintiffs, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of purchasers as to the origin or licensing of Lis' and/or GasBud's products or services;

d.      From otherwise competing unfairly with Plaintiffs in any manner or engaging in deceptive conduct;

e.      From continuing to perform in any manner whatsoever any of the acts complained of in the First Amended Complaint as to Plaintiffs; and

f.      From causing, engaging in, or permitting others to do any of the aforesaid acts.

57.     Within thirty (30) days of the entry of this Final Judgment by Consent, Lis shall file with the Court and serve on counsel for Plaintiffs a sworn written statement as provided in 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Lis has complied with the permanent injunction.

58.     Lis shall immediately recall from all distribution channels any products, packaging, advertising, and promotional materials bearing or infringing on the Subject Trademarks, including the SKITTLES® Mark and Trade Dress,

FINAL JUDGMENT BY CONSENT RE: LIS D/B/A GASBUDS

STARBURST® Mark and Trade Dress, LIFE SAVERS® Mark and Trade Dress, SNICKERS® Mark and Trade Dress, 3 MUSKETEERS® Mark and Trade Dress, MILKY WAY® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs.

59.     Lis shall immediately deliver to Plaintiffs' counsel for destruction any products, packaging, advertising, and promotional materials bearing or infringing on the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, STARBURST® Mark and Trade Dress, LIFE SAVERS® Mark and Trade Dress, SNICKERS® Mark and Trade Dress, 3 MUSKETEERS® Mark and Trade Dress, MILKY WAY® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs, pursuant to 15 U.S.C. § 1118. Any electronic equivalents of such materials shall be immediately deleted.

60.     Lis shall immediately cease sales of the products described above on the GasBuds website, located at https://www.gasbuds.com/, and in any other locations on the Internet, including other websites owned or operated by Lis or any of her affiliates, and any social media platforms owned or operated by Lis or any of her affiliates.

61.     Lis' wrongful conduct is deemed to be willful and this judgment is, therefore, non-dischargeable in the event she files for bankruptcy, pursuant to 11 U.S.C. § 523(a)(6).

62.     The Parties shall comply with the terms of the confidential settlement agreement entered into by and between the Parties and executed concurrently with their stipulation to this Final Judgment by Consent (the "Settlement Agreement"), the terms of which are incorporated herein by reference.

63.     This Final Judgment by Consent shall have no effect on any of Plaintiffs' claims against any other defendants to this action besides Lis. Notwithstanding the foregoing, this Court shall retain jurisdiction over this action,

as it relates to Lis, to enforce this Final Judgment by Consent and the terms of the Settlement Agreement.

**IT IS SO ORDERED**

Dated:   _January 17_ , 2023

The Honorable John W. Holcomb
UNITED STATES DISTRICT JUDGE

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

29

FINAL JUDGMENT BY CONSENT RE: LIS
D/B/A GASBUDS