1
2
3
4
5
6
7

8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT OF CALIFORNIA

10

11  WM. WRIGLEY JR. COMPANY, a
    Delaware corporation; and MARS,
12  INCORPORATED, a Delaware
    corporation,

13          Plaintiffs,

14      v.

15  ROBERTO CONDE d/b/a
    2020EDIBLEZ, an individual; JOEL
16  LEDESMA d/b/a INLAND EMPIRE
    420 SUPPLY, an individual; JESSICA
17  MOHR, an individual; STEPHEN
    MATA d/b/a OC 420 COLLECTION,
18  an individual; YAUHENIYA LIS d/b/a
    GASBUDS, an individual; EDWARD
19  AWAD d/b/a CANNABIS 420
    SUPPLY, an individual; GREEN RUSH
20  EXTRACTS LLC, a California limited
    liability company; MARCO BURGOS
21  d/b/a 2020EDIBLEZ, an individual; and
    DOES 4 through 10,

22

23          Defendants.

|  |  |
|---|---|
| Case No.: 5:21-cv-00777 JWH (SHKx) | |

**FINAL JUDGMENT BY CONSENT UNDER RULE 54(b) INCLUDING PERMANENT INJUNCTIVE RELIEF AS TO DEFENDANT MARCOS BURGOS**

24
25
26
27
28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

This matter having come before the Court for the entry of Final Judgment by Consent Under Rule 54(b) Including Permanent Injunctive Relief as to Defendant Marcos Burgos ("Burgos")[1], with the consent of plaintiffs Wm. Wrigley Jr. Company ("Wrigley") and Mars, Incorporated ("Mars," and, together with Wrigley, "Plaintiffs") and Burgos (Plaintiffs and Burgos are collectively referred to herein as the "Parties," and each individually as a "Party"), in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, it is **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. Burgos has been properly served and consents to the Court exercising personal jurisdiction over him. Burgos waives all defenses of lack of jurisdiction over his person, improper venue, insufficiency of process, and insufficiency of service of process.

2. This Court has subject matter jurisdiction over this action.

3. The Parties agree to submit to the jurisdiction of this Court to enforce the provisions of this Final Judgment by Consent Under Rule 54(b) Including Permanent Injunctive Relief as to Defendant Marcos Burgos (the "Final Judgment by Consent") worldwide.

4. Plaintiff Wrigley is a Delaware corporation with its principal place of business at 1132 West Blackhawk Street, Chicago, Illinois 60642.

5. Plaintiff Mars is a Delaware corporation with its principal place of business at 6885 Elm Street, McLean, Virginia 22101.

6. Defendant Burgos is an individual residing in Riverside County, California.

7. Wrigley is a recognized global leader in confections and, together with its affiliates, offers a wide range of product offerings including gum, mints, and candies. Wrigley markets products under dozens of well-known, distinctive, and

---

[1] Defendant Marcos Burgos was erroneously named as Marco Burgos in Plaintiffs' First Amended Complaint [Dkt. No. 76].

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

2

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

famous brands, including SKITTLES®, STARBURST®, LIFE SAVERS®, DOUBLEMINT®, and JUICY FRUIT®, to name a few.

8.   Wrigley and its predecessors have long marketed candy and related products under the famous SKITTLES® mark and trade dress, which features, among other things, the word mark SKITTLES® in white block lettering, distinctive rainbow designs, distinctive candy-coated lentils with an "S" imprinted thereon, and a cascade design of these candy lentils (hereinafter referred to as the "Skittles Trade Dress"), examples of which are shown below:





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS



9.      For 50 years, Wrigley and its predecessors-in-interest have continuously used the SKITTLES® mark to advertise, promote, and sell candy throughout the United States.

10.      Wrigley has earned billions of dollars in revenues from the sale of SKITTLES® candy in the United States.  Many millions of people throughout the country have purchased or consumed SKITTLES® candy.  In fact, SKITTLES® candy has been the best-selling non-chocolate candy in the United States for years.

11.      Wrigley has invested many millions of dollars to promote SKITTLES® candy.  Wrigley's advertisements and commercials for SKITTLES® have been seen by many millions of people nationwide.  Wrigley advertises SKITTLES® candy during the Super Bowl and other highly watched events.

12.      Based on the wide-spread and long-standing use and recognition of the SKITTLES® brand, Wrigley enjoys extensive trademark rights in the SKITTLES® mark and the Skittles Trade Dress.

13.      Wrigley owns numerous federal registrations for its SKITTLES® mark and the Skittles Trade Dress, including, but not limited to, U.S. Reg. Nos. 1,221,105; 2,535,714; 4,377,303; and 4,983,664 (such federal registrations, collectively with the common law trademark rights in the SKITTLES® mark and Skittles Trade Dress, are hereinafter referred to as the "SKITTLES® Mark and Trade Dress").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

4

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

14. Similarly, Wrigley and its predecessors have long marketed candy and related products under the famous STARBURST® mark and trade dress, which features, among other things, the word mark STARBURST® in stylized lettering and distinctive wrappers with an "S" imprinted thereon (hereinafter referred to as the "Starburst Trade Dress"), examples of which are shown below:





15. For 50 years, Wrigley and its predecessors-in-interest have continuously used the STARBURST® mark to advertise, promote, and sell candy throughout the United States.

16. Wrigley has earned billions of dollars in revenue from the sale of STARBURST® candy in the United States. Many millions of people throughout the country have purchased or consumed STARBURST® candy.

17. Wrigley has invested many millions of dollars to promote STARBURST® candy. Wrigley's advertisements and commercials for STARBURST® have been seen by many millions of people nationwide.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

5

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

18.     Based on the wide-spread and long-standing use and recognition of the STARBURST® brand, Wrigley enjoys extensive trademark rights in the STARBURST® mark and the Starburst Trade Dress.

19.     Wrigley owns numerous federal registrations for its STARBURST® mark and trade dress, including, but not limited to, U.S. Reg. Nos. 1,000,007; 1,545,544; 4,179,436; 4,268,392; and 4,625,960 (such federal registrations, collectively with the common law trademark rights in the STARBURST® mark and Starburst Trade Dress, are hereinafter referred to as the "STARBURST® Mark and Trade Dress").

20.     Additionally, Wrigley and its predecessors have long marketed candy and related products under the famous LIFE SAVERS® mark and trade dress, which features, among other things, the word mark LIFE SAVERS® in stylized lettering and distinctive circular candies with "LIFE SAVERS" imprinted thereon (hereinafter referred to as the "Life Savers Trade Dress").  An example of LIFE SAVERS® packaging is shown below:



FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21.     For 50 years, Wrigley and its predecessors-in-interest have continuously used the LIFE SAVERS® mark to advertise, promote, and sell candy throughout the United States.

22.     Wrigley has earned billions of dollars in revenue from the sale of LIFE SAVERS® candy in the United States.  Many millions of people throughout the country have purchased or consumed LIFE SAVERS® candy.

23.     Wrigley has invested many millions of dollars to promote LIFE SAVERS® candy.  Wrigley's advertisements and commercials for LIFE SAVERS® have been seen by many millions of people nationwide.

24.     Based on the wide-spread and long-standing use and recognition of the LIFE SAVERS® brand, Wrigley enjoys extensive trademark rights in the LIFE SAVERS® mark and the Life Savers Trade Dress.

25.     Wrigley owns numerous federal registrations for its LIFE SAVERS® mark and trade dress, including, but not limited to, U.S. Reg. Nos. 115,895; 236,694; 1,130,067; 2,358,709; 4,214,036; and 4,769,489 (such federal registrations collectively with the common law trademark rights in the LIFE SAVERS® mark and Life Savers Trade Dress, are hereinafter referred to as the "LIFE SAVERS® Mark and Trade Dress").

26.     Mars is a recognized global leader in chocolates, confections, and other food products.  Mars offers a wide range of product offerings, including chocolate bars, under dozens of well-known, distinctive, and famous brands, including SNICKERS®, 3 MUSKETEERS®, MILKY WAY®, M&M'S®, and TWIX®, to name a few.

27.     Mars has long marketed candy and related products under the famous SNICKERS® mark and trade dress, which features, among other things, the word mark SNICKERS® in blue block lettering in a parallelogram outlined in red (hereinafter referred to as the "Snickers Trade Dress"), examples of which are shown below:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

7

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS







28.    For almost 100 years, Mars has continuously used the SNICKERS®
mark to advertise, promote, and sell chocolate bars throughout the United States.

29.    Mars has earned billions of dollars in revenues from the sale of
SNICKERS® candy and other SNICKERS® branded products in the United States.
Many millions of people throughout the country have purchased or consumed
SNICKERS® candy and other SNICKERS® branded products.  In fact, the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

SNICKERS® chocolate bar has been one of the best-selling chocolate bars in the United States for years.

30.     Mars has invested many millions of dollars to promote SNICKERS® candy.  Mars' advertisements and commercials for SNICKERS® have been seen by many millions of people nationwide.  Mars has advertised SNICKERS® candy during the Super Bowl and other highly watched events.

31.     Based on the wide-spread and long-standing use and recognition of the SNICKERS® brand, Mars enjoys extensive trademark rights in the SNICKERS® mark and the Snickers Trade Dress.

32.     Mars owns numerous federal registrations for its SNICKERS® mark, parallelogram design, and chocolate bar design, including, but not limited to, U.S. Reg. Nos. 239,311; 1,270,149; 1,563,583; 1,593,286; 2,061,849; 2,082,946; 2,104,555; 2,911,432; 3,063,755; 3,120,788; 5,047,574; 6,465,002; and 6,480,397 (such federal registrations, collectively with the common law trademark rights in the SNICKERS® mark and Snickers Trade Dress, are hereinafter referred to as the "SNICKERS® Mark and Trade Dress").

33.     Similarly, Mars has long marketed candy and related products under the famous 3 MUSKETEERS® mark and trade dress, which features, among other things, the word mark 3 MUSKETEERS® in stylized red lettering outlined in blue and the number 3 inside a blue shield design (hereinafter referred to as the "3 Musketeers Trade Dress"), an example of which is shown below:



FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

34.     For 90 years, Mars has continuously used the 3 MUSKETEERS® mark to advertise, promote, and sell chocolate bars throughout the United States.

35.     Mars has earned millions of dollars in revenues from the sale of 3 MUSKETEERS® candy in the United States.  Many millions of people throughout the country have purchased or consumed 3 MUSKETEERS® chocolate products. In fact, the 3 MUSKETEERS® chocolate bar has been a popular chocolate bar in the United States for years.

36.     Mars has invested many millions of dollars to promote 3 MUSKETEERS® candy.  Mars' advertisements and commercials for 3 MUSKETEERS® have been seen by many millions of people nationwide.

37.     Based on the wide-spread and long-standing use and recognition of the 3 MUSKETEERS® brand, Mars enjoys extensive trademark rights in the 3 MUSKETEERS® mark and the 3 Musketeers Trade Dress.

38.     Mars owns federal registrations for its 3 MUSKETEERS® mark and the 3-shield design, including, but not limited to, U.S. Reg. Nos. 1,272,036; 1,683,918; 2,675,569; 3,338,622; and 5,596,164 (such federal registrations, collectively with the common law trademark rights in the 3 MUSKETEERS® mark and 3 Musketeers Trade Dress, are hereinafter referred to as the "3 MUSKETEERS® Mark and Trade Dress").

39.     Each of the above-referenced trademark registrations are valid, subsisting, and in full force under 15 U.S.C. § 1065, and, together with Plaintiffs' extensive common law rights, make the SKITTLES® Mark and Trade Dress, STARBURST® Mark and Trade Dress, and LIFE SAVERS® Mark and Trade Dress (collectively, the "Wrigley Trademarks"), and the SNICKERS® Mark and Trade Dress and 3 MUSKETEERS® Mark and Trade Dress (collectively, the "Mars Trademarks" and, together with the Wrigley Trademarks, the "Subject Trademarks") valuable assets owned by Plaintiffs.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

40.     Burgos helped engage in the marketing and offering for sale of edible cannabis candy products.

41.     Burgos promoted third parties which used the Subject Trademarks, without authorization or license, in the marketing of his products.

42.     Specifically, Burgos has helped engage in the marketing of products online via the 2020ediblez website, located at https://www.2020ediblez.com/, which violated Plaintiffs' rights in the Subject Trademarks.  Those products include: (1) "Skittles 500mg" (sold in four flavors: "Green," "Yellow," "Blue," and "Purple"); (2) "Sour candy coated chews 500mg"; (3) "Candy coated fruit chews Medicated 10 pack"; (4) "Cannaburst 500mg Starburst Gummies Edibles" (sold in three flavors: "Sours," "Berry," and "Tropical"); (5) "Starbuds Gummies" (sold in two flavors: "Sour Berry" and "Original"); (6) "Lifesavers Medicated Gummies 600mg"; (7) "Berry ring medicated gummies 600mg"; (8) "Life Savers CBD Gummies 200mg"; (9) "Berry Ring cbd gummies 200mg"; (10) "1000mg THC wax bar w peanuts and caramel (10-Pack)"; (11) "3 Marijuanas chocolate bar 100mg (10-Pack)"; and (12) "1000mg chocolate candy – Medicated edibles (SINGLE BAR)."  These products, collectively referred to as the "2020ediblez Infringing Products," are pictured below as they appear or appeared on 2020ediblez's website:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: MARCOS BURGOS





Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS



FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

14

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

43.     Burgos took such actions with full knowledge of, and in willful disregard of, Plaintiffs' intellectual property rights, and with the intent to take advantage of the good will that Plaintiffs have developed in the Subject Trademarks.

44.     Burgos' complained-of acts above constitute the following:

a.      Counterfeiting of the Subject Trademarks in violation of 15 U.S.C. § 1114;

b.      Infringement of the Subject Trademarks in violation of 15 U.S.C. §§ 1114 and 1125(a);

c.      Dilution of the inherently distinctive and famous Subject Trademarks in violation of 15 U.S.C. § 1125(c);

d.      Unfair competition and deceptive acts and practices in violation of 15 U.S.C. § 1125(a)(1)(A);

e.      Unlawful, unfair, and/or fraudulent acts or business practices, including unfair, deceptive, untrue, and misleading advertising, in violation of California Business and Professions Code §§ 17200, *et seq.*;

f.      Dilution of the inherently distinctive and famous Subject Trademarks in violation of California Business and Professions Code § 14247;

g.      Unfair competition and deceptive acts and practices in violation of common law.

45.     This is an exceptional case in accordance with 15 U.S.C. § 1117.

46.     Burgos is permanently enjoined and restrained:

a.      From directly or indirectly engaging in any further trademark counterfeiting, trademark infringement, trademark dilution, unfair competition, or deceptive business practices relating to the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, the STARBURST® Mark and Trade Dress, the LIFE SAVERS® Mark and Trade Dress, the SNICKERS® Mark and Trade Dress, and the 3

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

FINAL JUDGMENT BY CONSENT RE: MARCOS BURGOS

MUSKETEERS® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs;

b.     From making, manufacturing, advertising, marketing, offering, selling, or distributing any products that feature, copy, imitate, simulate, or are confusingly similar to, or are likely to dilute the distinctive nature of, or tarnish the goodwill of, the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, the STARBURST® Mark and Trade Dress, the LIFE SAVERS® Mark and Trade Dress, the SNICKERS® Mark and Trade Dress, and the 3 MUSKETEERS® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs;

c.     From representing by any means whatsoever, directly or indirectly, that any products sold or services rendered by Burgos are associated with, sponsored by, licensed by, and/or connected or affiliated with Plaintiffs, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of purchasers as to the origin or licensing of Burgos' products or services;

d.     From otherwise competing unfairly with Plaintiffs in any manner or engaging in deceptive conduct;

e.     From continuing to perform in any manner whatsoever any of the acts complained of in the First Amended Complaint as to Plaintiffs; and

f.     From causing, engaging in, or permitting others to do any of the aforesaid acts.

47.     Burgos shall immediately recall from all distribution channels any products, packaging, advertising, and promotional materials bearing or infringing on the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, STARBURST® Mark and Trade Dress, LIFE SAVERS® Mark and Trade Dress, SNICKERS® Mark and Trade Dress, 3 MUSKETEERS® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

48.     Burgos shall immediately deliver to Plaintiffs' counsel for destruction any products, packaging, advertising, and promotional materials that are in his possession, custody, or control, bearing or infringing on the Subject Trademarks, including the SKITTLES® Mark and Trade Dress, STARBURST® Mark and Trade Dress, LIFE SAVERS® Mark and Trade Dress, SNICKERS® Mark and Trade Dress, 3 MUSKETEERS® Mark and Trade Dress, or any other trademarks or trade dress owned by Plaintiffs, pursuant to 15 U.S.C. § 1118.  Any electronic equivalents of such materials shall be immediately deleted.

49.     Burgos shall immediately cease sales of the products described above in any location on the Internet, including any other websites owned or operated by Burgos or any of his affiliates, and any social media platforms owned or operated by Burgos or any of his affiliates.  Burgos shall immediately account for and disgorge to Plaintiffs any profits wrongfully derived by his unlawful conduct.

50.     The Parties shall comply with the terms of the confidential settlement agreement entered into by and between the Parties and executed concurrently with their stipulation to this Final Judgment by Consent (the "Settlement Agreement"), the terms of which are incorporated herein by reference.

51.     This Final Judgment by Consent shall have no effect on any of Plaintiffs' claims against any other defendants to this action besides Burgos. Notwithstanding the foregoing, this Court shall retain jurisdiction over this action, as it relates to Burgos, to enforce this Final Judgment by Consent and the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: _____January 17_____, 2023

_____
The Honorable John W. Holcomb
UNITED STATES DISTRICT JUDGE

FINAL JUDGMENT BY CONSENT RE:
MARCOS BURGOS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations